# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

DAVID DICUS,

        Defendant.

No. CR 07-32-MWB

**MEMORANDUM OPINION AND ORDER REGARDING SENTENCING AND SANCTIONS FOR THE PROSECUTION'S BREACH OF THE DEFENDANT'S PLEA AGREEMENT**

————————————

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   A. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      1. The charges and Dicus's plea . . . . . . . . . . . . . . . . . . . . . 5
      2. The PSIR and sentencing arguments . . . . . . . . . . . . . . . . 7
      3. The prosecutorial misconduct issue . . . . . . . . . . . . . . . . 8
   C. The Sentencing Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
   A. The Prosecution's Breach Of A Plea Agreement . . . . . . . . . . . . . . 14
      1. Due process implications . . . . . . . . . . . . . . . . . . . . . . . 14
      2. Recidivist prosecutorial misconduct in the Northern District of Iowa . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      3. The applicable two-step analysis . . . . . . . . . . . . . . . . . . 15
   B. The Two-Step Analysis Here . . . . . . . . . . . . . . . . . . . . . . . . 16
      1. Step 1: Determination of breach . . . . . . . . . . . . . . . . . . 16
      2. Step 2: Determination of the appropriate remedy . . . . . . . . 17
        a. The typical remedies . . . . . . . . . . . . . . . . . . . . . . 18
        b. Dicus's entitlement to relief . . . . . . . . . . . . . . . . . . 21
        c. Inadequacy of the typical remedies here . . . . . . . . . . 23

    *d.*  *The "touchstones" for the appropriate remedy* . . . . . . 25
    *e.*  *The appropriate remedy here* . . . . . . . . . . . . . . . . 26
  *C.* **Reasonableness Of The Resulting Sentence** . . . . . . . . . . . . . . . . . . . 34
    *1.*  *The "reasonableness" analysis* . . . . . . . . . . . . . . . . . . . . 34
    *2.*  *The balance of the § 3553(a) factors* . . . . . . . . . . . . . . . . 35

***III. CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

At a sentencing hearing on September 9, 2008, I announced that I was reducing the defendant's sentence from the high end to the low end of his advisory guidelines range as a sanction for the prosecution's serious breach of the defendant's plea agreement. I would otherwise have sentenced the defendant at the top of his guidelines range based on his sales of marijuana to minors, which was a factor not reflected in his advisory guidelines range. However, the Chief Judge of our district had already found the prosecution's breach of the plea agreement to be prosecutorial misconduct, and I imposed the sentence reduction, at the defendant's request, as the appropriate sanction for such serious misconduct. I now enter this memorandum opinion and order to memorialize more fully my rationale for granting a sentence reduction as a targeted remedy for serious and recidivist prosecutorial misconduct.

## I. INTRODUCTION

### A. Factual Background

In a plea agreement, dated May 29, 2007, the parties stipulated to the following pertinent facts:

A.  On March 10, 2006, Tami Dicus [a co-defendant] knowingly and intentionally distributed marijuana to C.W. and S.C., minors under the age of 18 years old.

B.  On March 13, 2006, the Marion Police Department executed a search on the Dicus residence [in] Marion, IA. At the time of the search both Tami and David Dicus resided at the residence. Defendant's residence [in] Marion, IA, is located within 1,000 feet of Hannah Park, a playground. During this search the Marion Police Department seized the following:

- $3,170 cash in drug proceeds;
- Four gallon bags of marijuana;
- marijuana cigarettes;
- miscellaneous drug paraphernalia, including a digital scale;
- ammunition; and
- letters discussing their drug activity.

Defendant and Tami Dicus knowingly and intentionally possessed these items. Defendant and Tami Dicus intended to distribute some or all of the marijuana. The $3,170 constituted proceeds of defendant and Tami Dicus's prior marijuana sales.

* * *

E.  Defendant stipulates and agrees that he devised and lead [sic] the marijuana distribution conspiracy. As the leader, defendant made all the arrangements with the suppliers and purchased all the marijuana he and Tami Dicus sold during the conspiracy.

F.  Defendant and Tami Dicus distributed marijuana to C.W. over 30 times between 2005 and March 13, 2006. During that period, C.W. purchased a quarter of an

ounce of marijuana (7 grams) on twenty or more occasions, an ounce on two occasions, and something less than a quarter of an ounce on other occasions. At the time of the distributions, C.W. was 16 years of age. Additionally, C.W. used marijuana in the Dicus residence with defendant and/or Tami Dicus on four occasions.

* * *

J.    Defendant and Tami Dicus distributed marijuana to S.C. around 20 times. During that period, S.C. would typically purchase a "dub" (4 grams) of marijuana each time. At the time of the distributions, S.C. was 16 years of age. Additionally, on at least three occasions, S.C. used marijuana with defendant and Tami Dicus in the Dicus residence. S.C. used marijuana with defendant on one occasion and with Tami Dicus on three occasions.

* * *

L.    Defendant stipulates and agrees that he is a convicted felon, having been previously convicted of the following:

- On about July 15, 1998 in the Iowa District Court in and for Linn County, Iowa, case number FECR 23666, defendant was sentenced for the Class D Felony offense of Possession with Intent to Deliver a Controlled Substance and the Class D felony offense of Dominion and Control of a Firearm as a Felon.

- On or about September 29, 1992 in the Iowa District Court in and for Linn County, Iowa, case number CRF 13034, defendant was sentenced for the felony offense of Operating While Intoxicated, Third Offense.

Plea Agreement (docket no. 27-2) (attached to minutes of May 31, 2007, plea hearing).

The plea agreement also included a handwritten addition that, with the exception of an enhancement based on Dicus's role in the offense, there would be "*[n]o other enhancements* making the adjusted offense level 25 after 3 levels downward for acceptance." Plea Agreement, § 8 (emphasis added). The court finds that this stipulation was part of the consideration for the plea agreement.

## B. Procedural Background

### 1. The charges and Dicus's plea

On April 18, 2007, a Grand Jury handed down an Indictment (docket no. 5) charging David Dicus with the following offenses: **Count 1** charged Dicus with conspiracy to distribute and to possess with intent to distribute marijuana within 1,000 feet of a playground in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860; **Count 3** charged Dicus with possession with intent to distribute marijuana within 1,000 feet of a playground after a prior conviction for a felony drug offense in violation of 21 U.S.C. §§ 841(a)(1), 851, and 860; **Count 4** charged Dicus with maintaining a place for the purpose of using marijuana within 1,000 feet of a playground in violation of 21 U.S.C. §§ 856(a)(1) and 860; and **Count 5** charged Dicus with being an unlawful user of marijuana and a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2).[1] The Indictment included forfeiture allegations pertaining to currency, any firearms, and ammunition.

---

[1]Tami Dicus, Dicus's wife, was charged as a co-defendant on **Counts 1**, **3**, and **4**, and as the sole defendant on **Count 2**, which charged her with distribution of marijuana to a person under the age of twenty-one within 1,000 feet of a playground in violation of 21 U.S.C. §§ 841(a)(1), 859, and 860.

On May 29, 2007, Dicus entered into the plea agreement referenced above, agreeing to plead guilty to **Counts 1** and **5**, and on May 31, 2007, he entered a guilty plea to those charges before a magistrate judge of this court. In the plea agreement, the parties made the following stipulations with respect to Dicus's advisory Sentencing Guidelines calculation:

> 8. The parties stipulate and agree that the United States Sentencing Guidelines should be applied as follows:
>
> **A. For Count 1 of the Indictment:**
> Under USSG §2D1.2(a)(3) the offense level should be calculated by starting with a base offense level of **26** because the offense occurred within 1,000 feet of a protected location and involved persons less than 18 years of age. The parties further stipulate and agree that there are no applicable specific offense characteristics. The Chapter Two offense level for Count 1 is **26**.
>
> **B.     For Count 5 of the Indictment:**
> Under USSG[ ]§ 2K2.1 the offense level should be calculated by starting with a base offense level of **14**, because defendant was a prohibited person at the time he possessed the ammunition. The parties further stipulate and agree that there are no applicable specific offense characteristics. The Chapter Two offense level for Count 5 is Level 14.
>
> **C.     Role in the Offense**
> The parties stipulate and agree based upon [D]efendant's leadership role in the offense, [D]efendant should receive a two-level upward adjustment. Defendant's adjusted offense level is **28**. Defendant was a supervisor or leader of the conspiracy during the commission of the offenses.

*No other enhancements making the adjusted offense level 25*
*after 3 levels downward for acceptance.*

> **D.     Acceptance of Responsibility**
> The parties stipulate and agree, that as of the date of
> this agreement, [D]efendant appears to qualify for a
> two-level downward adjustment for acceptance of
> responsibility . . . . If, at the time of sentencing, the
> court grants a two-level reduction under U.S.S.G. §3El.
> l(a), the United States agrees to make a motion under
> USSG §3El.l(b) for an additional one-level reduction,
> acknowledging the timeliness of the [D]efendant's
> decision to plead guilty.

> 9.     The [D]efendant, his attorney and the United States may
> make whatever comment and evidentiary offer they
> deem appropriate at the time of the guilty plea,
> sentencing or any other proceeding related to this case,
> so long as the offer or comment does not violate any
> other provision of this agreement. . . .

Plea Agreement, at §§ 8-9 (all emphasis in original, except handwritten words italicized
and offense levels bolded). On June 18, 2007, Chief Judge Linda R. Reade, to whom this
case was then assigned, accepted the magistrate judge's Report and Recommendation that
the court accept Dicus's guilty plea to **Counts 1** and **5**. Chief Judge Reade set Dicus's
sentencing for December 5, 2007.

### 2.     *The PSIR and sentencing arguments*

On October 29, 2007, the probation office filed a sealed presentence investigation
report (PSIR) recommending, *inter alia*, that Dicus be sentenced as a career offender, with
an adjusted base offense level of **29** and criminal history category **III**, based, in part, on
Dicus's 1992 conviction for Operating While Intoxicated, Third Offense (1992 OWI 3rd),
which was identified in the plea agreement. Plea Agreement, § 23, ¶ L. On November

21, 2007, Dicus filed a Sentencing Memorandum (docket no. 45), asserting that the prosecution was bound by the plea agreement that there would be no enhancements or any finding of career offender status. Dicus also argued that his 1992 OWI 3rd offense was too old to be properly counted to establish his career offender status. Also on November 21, 2007, the prosecution filed a Sentencing Memorandum (docket no. 44) in which, notwithstanding the terms of the plea agreement, the prosecution expressly argued that Dicus should be sentenced as a career offender as defined in U.S.S.G. § 4B1.1, with an adjusted offense level of **29** after a reduction for acceptance of responsibility. The only other issue addressed in the prosecution's Sentencing Memorandum was Dicus's ability to pay a fine. On November 27, 2007, the prosecution also filed a Response To Defendant's Sentencing Memorandum (docket no. 46), in which the prosecution argued that the plea agreement did not prevent the prosecution from arguing that Dicus qualifies as a career offender.

### 3. *The prosecutorial misconduct issue*

On November 29, 2007, Chief Judge Reade entered an order (docket no. 49) requiring supplemental briefs from the parties concerning whether the prosecution had breached the plea agreement and what remedy would be appropriate if the court found such a breach, expressly directing the parties' attention to *United States v. Mosley*, 505 F.3d 804 (8th Cir. 2007), which had just been decided on October 12, 2007. Chief Judge Reade subsequently reset the sentencing hearing for December 17, 2007.

The prosecution filed its Supplemental Sentencing Memorandum (docket no. 51) on December 3, 2007, and Dicus filed his Supplemental Sentencing Memorandum (docket no. 55) on December 9, 2007. By sealed order dated December 12, 2007, Chief Judge Reade found a "clear violation" by the prosecution of the handwritten unnumbered paragraph of the plea agreement stipulating that "no other enhancement" applied and that Dicus's

adjusted offense level after a reduction for acceptance of responsibility would be **25**. Based upon her finding of a breach of the plea agreement, Chief Judge Reade found that, pursuant to *Mosley*, 505 F.3d at 809-12, and *Santobello v. New York*, 404 U.S. 257, 262-62 (1971), she had no choice but to recuse herself from this case. Therefore, she cancelled the sentencing hearing scheduled for December 17, 2007, and directed that the Clerk of Court reassign the case to another district court judge. This matter was then reassigned to me.

## C. *The Sentencing Hearing*

I reset Dicus's sentencing hearing for September 9, 2008. On April 16, 2008, in the interim between reassignment of the case and the sentencing hearing, the United States Supreme Court decided *Begay v. United States*, ___ U.S. ___, 128 S. Ct. 1581 (2008), in which the Court held that a felony offense of driving while under the influence of alcohol is not a "violent felony" within the meaning of the Armed Career Criminal Act. On May 15, 2008, the Eighth Circuit Court of Appeals held that, pursuant to *Begay*, felony offenses of driving while under the influence of alcohol do not qualify as violent felonies under the Armed Career Criminal Act and do not permit application of the career offender guideline, U.S.S.G. § 4B1.1. *United States v. Heikes*, 525 F.3d 662, 664 (8th Cir. 2008).

At the sentencing hearing on September 9, 2008, the parties agreed, and I found, that in the wake of *Begay*, Dicus could no longer be sentenced as a career offender, notwithstanding the probation office's prior recommendation of such an enhancement and the prosecution's prior argument for such an enhancement. The parties also agreed, and I found, that the probation office had rescored Dicus's total offense level as **25**, his criminal history category as **III**, and his resulting advisory Sentencing Guidelines range as 70 to 87 months.

Dicus then reiterated his argument that his 1992 OWI 3rd offense was too old to be properly considered for determination of his criminal history category, adding that the State of Iowa wipes the slate clean after 12 years for such an offense, so that his criminal history category should be **I**. The prosecution argued that the State of Iowa only wipes the slate clean for administrative purposes of driver's licensing, but that the offense remains a prior felony conviction. Dicus's attorney conceded that he was making the argument about the effect of the 1992 OWI 3rd offense at his client's request. I found that the 1992 OWI 3rd offense was within the pertinent fifteen-year period for consideration of Dicus's criminal history, because Dicus had received a five-year prison term and was paroled on October 15, 1994. Thus, I found that, notwithstanding Dicus's objections, Dicus's criminal history category remained **III**.

Dicus next asserted that he wished to argue the "reasonableness" of the sentence in light of the misconduct on the part of the prosecution in breaching the plea agreement. Dicus argued that the prosecution had "gotten the benefit" of the Supreme Court's decision in *Begay*, in that the decision in *Begay* appeared to remedy the prosecution's misconduct in seeking a career offender enhancement based on the 1992 OWI 3rd offense, notwithstanding contrary provisions in the plea agreement, so that the prosecution should still have some accountability for blatantly disregarding the plea agreement. Therefore, he sought a sentence at the low end of his advisory Sentencing Guidelines range as the appropriate sanction for the prosecution's misconduct. The prosecution, now represented by a different Assistant United States Attorney, argued that, even if the violation of the plea agreement was "clear" or "blatant," it was not in "bad faith," and was more in the nature of a "technical" violation, because the career offender provision was not what one would ordinarily consider an "enhancement." The prosecution also suggested that the

career offender argument had been more in the way of informing the court of the circumstances pertinent to the defendant's sentence.

Contrary to the prosecution's frivolous and grossly inaccurate assertions, the record plainly establishes that the parties had known about the 1992 OWI 3rd offense and its possible effect on Dicus's status as a career offender from at least as early as the date of the plea agreement, and, indeed, the probation office had already brought the offense and its impact on Dicus's possible career offender status to the court's attention in the October 29, 2007, PSIR, before the prosecution filed its Sentencing Memorandum expressly arguing for a career offender enhancement. Thus, there was no need for the prosecution to bring the career offender issue to the court's attention. The record also plainly established that the prosecution's agreement not to seek career offender status based on the 1992 OWI 3rd offense was part of the consideration for the plea agreement, where a career offender enhancement would almost double, or even more than double, Dicus's potential sentence. Finally, the record plainly establishes that the prosecution did more than simply advise the court of the possibility of a career offender issue; the prosecution affirmatively argued for application of a career offender enhancement, notwithstanding the "no other enhancements" provision of the plea agreement.

Consequently, I found as follows:

> I think it's beyond blatant. I think it's egregious. To enter into an agreement that you're going to do something and do a 180-degree turn and then actually argue for the enhancement in complete violation of the plea agreement? Why isn't that blatant and egregious? It's one thing if you're trying to bring information to the judge because you have a duty as an officer of the Court. But that's not the situation we have here. It was already brought to the attention of the judge by probation, and then the government turned around and argued it in direction violation of the plea agreement.

* * *

> . . . I'm just going with what Judge Reade found, it was a clear violation and the language of the agreement was plain and simple and clear and the government breached the plea agreement. So I'm not making any additional findings. I'm not—I like your analogy to punitive damages, you know. I'm not finding any bad faith, although it seems inconceivable to me that you could breach the plea agreement in the way the government did it and argue that it was in good faith.

Real Time Transcript, September 8, 2008, Sentencing Hearing at 16, 19; *see also id.* at 27 (reiterating that the breach was "egregious," and adding that it was "willful," although not necessarily "malicious"). Upon further reflection, and further opportunity to study the transcript of the sentencing hearing, I now conclude that the prosecution clearly acted in bad faith when it breached the plea agreement. Nevertheless, whether I characterize the prosecution's breach of the plea agreement as in bad faith or not in good faith makes no difference in my decision concerning the appropriate remedy in this case.

In light of the prosecution's egregious misconduct, and the relief from that misconduct already provided—however serendipitously—by the Supreme Court's decision in *Begay*, Dicus argued for some "positive benefit" in the form of a sentence at the low end of the advisory guidelines range. The prosecution chose to offer no arguments concerning the appropriate sentence.

I found that Dicus's total offense level is **25** and that his criminal history category is **III**, which results in an advisory United States Sentencing Guidelines range of 70 to 87 months. I pointed out that Dicus's drug sales to minors would ordinarily have led me to sentence him at the top of the advisory guidelines range, or indeed, to impose an upward variance, because I did not find that such conduct was taken into consideration in the guidelines calculation, and that the statutory enhancement for such conduct was of no

consequence, because Dicus's guidelines range was higher than the statutory enhancement. I found, however, that my belief that the prosecution's breach of the plea agreement was egregious and that there ought to be some consequence to the United States Attorney's Office for that breach weighed against my inclination to sentence Dicus at the top of the guidelines range. Therefore, I determined that Dicus should be sentenced at the bottom of the guidelines range, resulting in what is essentially a seventeen-month reduction in his sentence for the prosecution's breach of the plea agreement, albeit a "reduction" still within the context of Dicus's advisory guidelines range. I also found that the low end of the guidelines range was sufficient to meet all of the factors in 18 U.S.C. § 3553(a)(2), and that none of the other § 3553(a) factors weighed in favor of an upward or downward variance. Therefore, I concluded that a reasonable sentence was 70 months and that such a sentence was sufficient, but no greater than necessary, to achieve all of the sentencing purposes.

I turn now to a fuller explanation of my legal rationale for granting a sentence reduction as a remedy for prosecutorial misconduct. I have issued this ruling with speed, but not with haste, within the time for the prosecution to appeal the sentencing determination, if it should desire to do so in light of the amplified rationale that I now provide. However, I note that at no time during the sentencing hearing did the prosecution object to my sentence at the low end of the guidelines range based upon the serious and recidivist prosecutorial misconduct.

## II. LEGAL ANALYSIS

### A. The Prosecution's Breach Of A Plea Agreement

#### 1. Due process implications

The breach of a plea agreement by the prosecution is a serious matter:

> Allowing the government to breach a promise that induced a guilty plea violates due process. *Santobello v. New York,* 404 U.S. 257, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); *[United States v.] Van Thournout,* 100 F.3d [590,] 594 [(8th Cir. 1996)].  Further, "with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *United States v. Jensen,* 423 F.3d 851, 854 (8th Cir. 2005) (internal citation omitted).

*United States v. E.V.*, 500 F.3d 747, 751 (8th Cir. 2007); *accord United States v. Sanchez*, 508 F.3d 456, 460 (8th Cir. 2007) ("Due process may be violated if there is a breach of a promise that induced a guilty plea.").  Indeed, breach of a plea agreement is sufficiently serious that "harmless-error analysis does not apply when the government breaches a plea agreement." *United States v. Mosley*, 505 F.3d 804, 810 (8th Cir. 2007); *see also id.* at 812 (reading *Santobello* to hold that harmless-error analysis does not apply to breach of a plea agreement).

#### 2. Recidivist prosecutorial misconduct in the Northern District of Iowa

Because of the seriousness of the prosecution's breach of a plea agreement, it is unfortunate that such incidents are not unheard of, either in this Circuit or this District. Indeed, *just before* the breach of the plea agreement occurred in this case, the Eighth Circuit Court of Appeals held on October 12, 2007, in *United States v. Mosley*, 505 F.3d

804 (8th Cir. 2007), that the United States Attorney's Office for the Northern District of Iowa had also breached a plea agreement in another case before Chief Judge Reade by making improper sentencing arguments. Specifically, in *Mosley*, the prosecution had argued that the defendant had failed to accept responsibility because of actions taken before she signed the plea agreement, after stipulating that, as of the date of the plea agreement, the defendant appeared to qualify for a downward adjustment for acceptance of responsibility. *See* 505 F.3d at 808-09. Under these circumstances, the United States Attorney's Office for the Northern District of Iowa should have been particularly cautious about compliance with the terms of plea agreements at the time of the breach in question here, which once again involved arguing for sentence determinations that were contrary to stipulations in a plea agreement. Consequently, the United States Attorney's Office for the Northern District of Iowa now comes before me as a "repeat offender," in light of the violations of plea agreements, in similar ways and, indeed, within a relatively short time span, in *Mosley* and this case.[2]

### 3. The applicable two-step analysis

When a defendant asserts that the prosecution has breached a plea agreement, the court engages in a two-step process: The court must first determine whether or not there has been a breach of the plea agreement, and if there was a breach, then determine the proper remedy. *See, e.g., E.V.*, 500 F.3d at 751 & 754; *accord Mosley*, 505 F.3d at 809-12 (where there has been a breach of the plea agreement, harmless-error analysis does not apply, and the court must consider the proper remedy). Here, Chief Judge Reade has

---

[2]Nor are these the only two incidents of serious prosecutorial misconduct in this District during my tenure as a United States District Court Judge. Although there are other examples of serious prosecutorial misconduct in this District, it is not necessary to catalogue them for purposes of the present ruling.

already performed the first step in the process, by finding a "clear violation" of the plea agreement by the prosecution. The process here is bifurcated, because Chief Judge Reade found that, under *Santobello v. New York*, 404 U.S. 257, 262-63 (1971), as construed in *Mosley*, 505 F.3d at 809-12, once she found a breach of the plea agreement, Dicus had to be sentenced by a different judge to determine the appropriate remedy for the breach. *Mosley*, 505 F.3d at 812 (emphasizing that reassignment to a different judge "'is in no sense to question the fairness of the sentencing judge'") (quoting *Santobello*, 404 U.S. at 263). Thus, the second step in the process is left for me. Nevertheless, because I find that the nature of the breach is relevant to the proper remedy, I will examine both steps in the process.

## B. The Two-Step Analysis Here

### 1. Step 1: Determination of breach

As to the first step in the analysis of an alleged breach of a plea agreement by the prosecution, the Eighth Circuit Court of Appeals has explained, "Whether the government has breached a plea agreement is a matter of law reviewed *de novo*." *Id.* at 751 (citing *United States v. Van Thournout,* 100 F.3d 590, 594 (8th Cir. 1996)). More specifically, "[p]lea agreements are contractual in nature and should be interpreted according to general contractual principles." *Id.*; *accord Sanchez*, 508 F.3d at 460; *Mosley*, 505 F.3d at 808 ("Where a plea agreement has been accepted by the court, we generally interpret the meaning of the terms of the agreement according to basic principles of contract law."). "'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* at 752 (quoting *Santobello*, 404 U.S. at 262). Thus, the

court looks to see if there is an "enforceable, bargained-for term of the plea agreement" that has been violated. *Id.*

Here, the handwritten addition to the plea agreement, stating that, apart from an enhancement for role in the offense, there would be "[n]o other enhancements," and that the adjusted offense level would, therefore, be "25 after 3 levels downward for acceptance," *see* Plea Agreement (docket no. 27-2), § 8(D), was plainly a "bargained-for term of the plea agreement," *E.V.*, 500 F.3d at 752, as evidenced by its handwritten addition to the otherwise typewritten plea agreement. Moreover, where the existence of Dicus's prior conviction for the 1992 OWI 3rd was plainly known to the parties at the time of the plea agreement, because it was mentioned in that plea agreement, Plea Agreement, § 23, ¶ L, the agreement to the adjusted offense level and no further enhancements was plainly an inducement to enter into the agreement. *E.V.*, 500 F.3d at 752. Moreover, I concur fully in Chief Judge Reade's finding that the term of the plea agreement in question was plain and unambiguous, and that the prosecution's argument for a career offender enhancement was, consequently, "a clear violation" of that provision. Indeed, as explained above, I find that the violation was not just "clear," but "egregious," not least because it went to the heart of Dicus's inducement to plead guilty to avoid the career offender implications of the 1992 OWI 3rd offense under pre-*Begay* law.

Thus, I find that there was not only a breach of the plea agreement by the prosecution, but an egregious breach.

### 2.     *Step 2:   Determination of the appropriate remedy*

Because Chief Judge Reade found, and I agree, that there was a breach of the plea agreement, the question that is entirely for me to decide is the proper remedy for the prosecution's breach of the plea agreement. *See, e.g., E.V.*, 500 F.3d at 751 & 754; *accord Mosley*, 505 F.3d at 809-12 (where there has been a breach of the plea agreement,

harmless-error analysis does not apply, and the court must consider the proper remedy). I begin that determination by examining the typical remedies for the prosecution's breach of a plea agreement.

### a. *The typical remedies*

"When the government breaches a plea agreement, 'the defendant is typically given the option of withdrawing his guilty plea or demanding specific performance.'" *E.V.*, 500 F.3d at 754 (quoting *United States v. Goings,* 200 F.3d 539, 544 (8th Cir. 2000), with internal citations omitted). Indeed, most courts, including the Eighth Circuit Court of Appeals, have usually treated withdrawal of the defendant's guilty plea or specific performance of the breached provision of the agreement as the *only* available options. *See, e.g., Goings*, 200 F.3d at 544 ("Where it is clear that the government violated the terms of a plea bargain, the defendant is typically given the option of withdrawing his guilty plea or demanding specific performance."); *United States v. Mitchell*, 136 F.3d 1192, 1194 (8th Cir. 1998) (noting that the remedies for breach of plea agreement are specific performance or permission to withdraw plea), *cert. denied*, 534 U.S. 856 (2001); *United States v. Van Thournout*, 100 F.3d 590, 594 (8th Cir. 1996) ("'There are two potential remedies for the government's breach of a plea agreement: remand for specific performance and withdrawal of the guilty plea.'") (quoting *Margalli-Olvera*, cited infra); *Margalli-Olvera v. I.N.S.*, 43 F.3d 345, 354-55 (8th Cir. 1994) ("There are two potential remedies for the government's breach of a plea agreement: remand for specific performance and withdrawal of the guilty plea."); *accord United States v. Cudjoe*, 534 F.3d 1349, 1356-57 & n.4 (10th Cir. 2008); *United States v. Griffin*, 510 F.3d 354, 367 (2d Cir. 2007); *United States v. Rivera*, 357 F.3d 290, 297 (3d Cir. 2004) ("'When the government breaches a plea agreement, the general rule is to remand the case to the district court for a determination whether to grant specific performance or to allow withdrawal of

the plea.'") (quoting *United States v. Nolan-Cooper*, 155 F.3d 221, 241 (3d Cir. 1998));

*United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993) (if the prosecution breaches a plea agreement, the breach may be remedied by requiring specific performance or permitting the defendant to withdraw the plea); *United States v. Jefferies*, 908 F.2d 1520, 1527 (11th Cir. 1990) (in the event of a breach of a plea agreement by the prosecution, there are two available remedies: "[t]he court can order specific performance of the agreement or afford the defendant the opportunity to withdraw the plea."). These are, after all, the two remedies expressly discussed by the Supreme Court in *Santobello*, 404 U.S. at 262-63. Of the two, the Eighth Circuit Court of Appeals has suggested that specific performance is the preferred remedy. *Goings*, 200 F.3d at 544; *Van Thournout*, 100 F.3d at 594; *Margalli-Olvera*, 43 F.3d at 354-55; *accord Cudjoe*, 534 F.3d at 1357 n.4 (finding that resentencing pursuant to the terms of the plea agreement is the preferred remedy and suggesting that withdrawal of the guilty plea should only be allowed when the breach is "'particularly egregious or intentional'") (quoting *United States v. Brye*, 146 F.3d 1207, 1213 (10th Cir. 1998)).

In contrast to the assumption that the court must grant one of these two typical remedies if the prosecution breaches a plea agreement, the Second Circuit Court of Appeals has recognized that "[t]here is a very limited exception to the need for a remedy for a plea agreement breach by the government where the violation is so minor that it does not cause the defendant to suffer any meaningful detriment." *United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005). As that court explained,

> In assessing whether a defendant suffered a meaningful detriment, the critical question is what the defendant reasonably understood to be the terms of the plea agreement, and whether his or her reasonable expectations have been fulfilled. *See Paradiso v. United States,* 689 F.2d 28, 31 (2d

Cir. 1982). For example, in *United States v. Casamento,* 887
F.2d 1141, 1181 (2d Cir. 1989), we held that the government
violated a plea agreement by submitting a sentencing
memorandum without specifically reserving its right to do so.
We deemed a remedy to be unnecessary, however, because the
memorandum included only brief statements that "could
properly have been presented to the district court as rebuttal to
[defendant's] arguments." *Id.* at 1182. Thus, the essential
purpose of the agreement was fulfilled. Similarly, in
*Paradiso,* 689 F.2d at 30-31, we held that no remedy was
required for a technical violation by the court of a binding plea
agreement because the sentence imposed "did comport with the
reasonable understanding and expectations of the defendant as
to the sentence for which he had bargained." *Id.* at 31.

*Vaval*, 404 F.3d at 155-56. In *Vaval*, however, the Second Circuit Court of Appeals found

that the prosecution's breach, which consisted of breach of a promise not to move for an

upward departure or to argue where to sentence the defendant within his guidelines range,

*required* a remedy, because the breached promise was "unquestionably the centerpiece of

the agreement." *Id.* at 156. The court found that, because the prosecution had violated

essential provisions of the plea agreement, and "because no specific performance of the

agreement was (or could be) granted to [the defendant] through a Rule 35 proceeding," the

court was required to order some remedy, and the court granted resentencing before a

different judge as the remedy that would fully cure the prosecution's breach. *Id.*

The Eighth Circuit Court of Appeals has also held that no relief from the

prosecution's violation of the plea agreement was appropriate where the sentencing court

had refused to impose the enhancement for which the prosecution had improperly argued,

in derogation of its promises in a plea agreement. *See E.V.*, 500 F.3d at 755. In *E.V.*,

the prosecution's breach was introduction of firearms testimony, despite terms of a plea

agreement that none of the offense characteristics contained in U.S.S.G. § 2D1.1(b),

which includes possession of a dangerous weapon, including a firearm, were applicable. *Id.* at 752. The reason that no remedy was necessary in that case was that "[t]he [district] court adhered to its assurance that 'there's not going to be a gun enhancement,' and did not increase Appellant's base offense level pursuant to section 2D1.1 or enhance his sentence pursuant to section 5K2.6 based on his alleged possession of a weapon." *Id.* at 755. Thus, there may be circumstances in which, notwithstanding a breach of a plea agreement by the prosecution, the defendant may not be entitled to any relief.

### b. Dicus's entitlement to relief

I find that this is not a case in which no remedy is appropriate, because the prosecution's breach was not minor or technical. *See Vaval*, 404 F.3d at 155-56. Rather, much as in *Vaval*, the prosecution's argument for a career offender enhancement was contrary to the "no other enhancements" provision that was "unquestionably the centerpiece of the agreement." *Id.* at 156. Because the plea agreement was clear, Dicus reasonably expected that the prosecution would not seek a career offender enhancement, and that reasonable expectation was not fulfilled. *Id.* Thus, Dicus suffered a meaningful detriment when, notwithstanding the "no other enhancements" provision, the prosecution expressly argued for a career offender enhancement, and some remedy is required. *Id.*; *accord Mosley*, 505 F.3d at 809-12 (where there has been a breach of the plea agreement, harmless-error analysis does not apply, and the court must consider the proper remedy).

I also find that this is not a case in which no remedy is appropriate, because the sentencing court declined to impose the sentencing enhancement for which the prosecution improperly argued, which, in this case, was the then-applicable career offender enhancement, based on Dicus's 1992 OWI 3rd. *See E.V.*, 500 F.3d at 755 (no relief from the prosecution's violation of the plea agreement was appropriate, because the sentencing court had refused to impose the enhancement for which the prosecution had improperly

argued, in derogation of its promises in a plea agreement). Here, the sentencing court did not save Dicus from the consequences of the prosecution's improper actions, an intervening change in the law did. I agree with Dicus that the prosecution should not "get the benefit" of *Begay* to save it from the consequences of its violation of the plea agreement, because granting no relief is inappropriate where the defendant has been subjected to a due process violation for which harmless-error analysis is not available. *See Santobello*, 404 U.S. at 257 (allowing the government to breach a promise that induced a guilty plea violates due process to which harmless-error analysis does not apply); *Sanchez*, 508 F.3d at 460 ("Due process may be violated if there is a breach of a promise that induced a guilty plea."); *Mosley*, 505 F.3d at 810-812 (breach of a plea agreement is a due process violation to which harmless-error analysis does not apply); *E.V.*, 500 F.3d at 751 (violation of a plea agreement violates due process).

Granting no relief is also inappropriate, because it would do nothing to deter prosecutorial misconduct or to give defendants an incentive to raise prosecutorial misconduct claims. *See, e.g.,* Sonja Starr,[3] *Sentence Reduction as a Remedy for Prosecutorial Misconduct* (hereinafter Starr, *Sentence Reduction*), 2 & n.10 (unpublished draft, September 2, 2008; used by permission) (citing Guido Calabresi, *The Exclusionary Rule*, 26 HARV. J.L. & PUB. POL'Y 111, 116-17 (2003), and Harry M. Caldwell and Carol A. Chase, *The Unruly Exclusionary Rule*, 78 MARQ. L. REV. 45, 68-71 (1994), as suggesting that the appropriate remedy for prosecutorial misconduct should be the combination of direct sanctions against the police, such as fines, to deter misconduct, with sentence reductions, to give defendants an incentive to raise misconduct claims). Moreover, "[p]rosecutorial misconduct has been a widespread and widely criticized

---

[3] Sonja Starr is an Assistant Professor at the University of Maryland School of Law.

problem in the U.S. criminal justice system for decades," albeit one for which existing remedies are ineffective, "largely because they are rarely invoked." *Id.* at 4 & 1. For example, as the Second Circuit Court of Appeals observed more than two decades ago, "Given this Court's unwillingness to use reversals as a means of disciplining prosecutors, threats to do so seem unlikely to have much effect. As a practical matter, prosecutors know that courts are reluctant to overturn convictions because of improper [conduct]." *United States v. Modica*, 663 F.2d 1173, 1183 (2d Cir. 1981) (cited in Starr, *Sentence Reduction*, at 13). The problem cannot continue to go unremedied by the courts, so that some relief from prosecutorial misconduct is appropriate in this case.

### c. *Inadequacy of the typical remedies here*

Courts have recognized that there may be circumstances in which one or the other of the preferred remedies for the prosecution's breach of a plea agreement—specific performance of the breached provision or withdrawal of the defendant's guilty plea—is inadequate. For example, the Third Circuit Court of Appeals has recognized that, where the defendant has already served a considerable portion of his sentence, so that "'permitting the withdrawal of his plea would be an empty remedy,'" or where the defendant sought specific performance because he did not want to withdraw his guilty plea, the court should not impose a remedy against the non-breaching party's will or a remedy that would be no remedy at all. *See United States v. Williams*, 510 F.3d 416, 427 (3d Cir. 2007) (citing *United States v. Badaracco*, 954 F.2d 928, 941 (3d Cir. 1992), as the first example, and *Nolan-Cooper*, 155 F.3d at 241, as the second). Thus, the Third Circuit Court of Appeals recognized that an exception to a typical remedy was appropriate, "when the circumstances dictate that there is only one appropriate remedy for the [non-breaching] defendant," although the exception was simply to default to the *other* typical remedy. *Id.*; *see also United States v. VanDam*, 493 F.3d 1194, 1206 (10th Cir. 2007) ("Although the

choice of remedy rests with the court rather than the defendant," the court would grant the defendant's request for resentencing, rather than requiring him to withdraw of his guilty plea, because "[w]hen . . . the defendant does not seek to withdraw his guilty plea, the less dramatic remedy of resentencing appears to be most apt.").

Here, however, the circumstances are exceptional in that *neither* of the typical remedies would provide adequate relief. Requiring specific performance of the breached term of the plea agreement would grant Dicus no relief whatsoever, because, in the interim between the prosecution's breach of the plea agreement and Dicus's sentencing hearing, the Supreme Court had mooted the issue of whether Dicus could be subjected to the career offender enhancement he was trying to avoid by entering into the plea agreement. *See Begay,* ___ U.S. ___, 128 S. Ct. 1581 (holding that a felony offense of driving while under the influence of alcohol is not a "violent felony" within the meaning of the Armed Career Criminal Act); *Heikes,* 525 F.3d at 664 (recognizing that the decision in *Begay* means that a felony offense of driving while under the influence of alcohol cannot be the basis for a career offender sentencing enhancement pursuant to U.S.S.G. § 4B1.1). Similarly, granting Dicus the opportunity to withdraw his guilty plea would likely result in prejudice to Dicus, rather than any relief from the prosecution's misconduct, as he would have to commence the whole process anew, admittedly without any possibility of a career offender enhancement, but equally without any assurance that the prosecution will not contest his adjusted offense level of **25**. Under these circumstances, it is inappropriate to foist upon the defendant a "remedy" of allowing him to withdraw his guilty plea, because he does not seek such a remedy, even if specific performance of the breached term of the plea agreement would provide him with no relief. *Cf. Williams,* 510 F.3d at 427 (holding that the court should not impose a remedy against the non-breaching party's will, so that the defendant, who did not want to withdraw his guilty plea, should be resentenced

pursuant to the terms of the breached plea agreement). Thus, in this case, the recognized remedies for the prosecution's breach of the plea agreement provide no relief at all. The question is, what remedies are available in such circumstances?

### d. The "touchstones" for the appropriate remedy

Although the Eighth Circuit Court of Appeals, like other courts, has explicitly recognized only the typical remedies of specific performance or withdrawal of a guilty plea for the prosecution's breach of a plea agreement, the Eighth Circuit Court of Appeals has recognized that "the determination of the appropriate remedy is *typically* left to the discretion of the court," and that enforcement of the agreement and withdrawal of the guilty plea are "*[a]mong the options available to the court*." *United States v. Fowler*, 445 F.3d 1035, 1038 (8th Cir. 2006) (emphasis added); *see also E.V.*, 500 F.3d at 754 ("When the government breaches a plea agreement, 'the defendant is *typically* given the option of withdrawing his guilty plea or demanding specific performance.'") (emphasis added) (quoting *Goings*, 200 F.3d at 544).[4] This language appears to me to recognize that, in appropriate circumstances, the court can consider sanctions for the prosecution's breach of a plea agreement beyond the recognized remedies of ordering specific performance of the breached provision or allowing the defendant to withdraw his guilty plea.

Similarly, as I read the Supreme Court's decision in *Santobello*, that case does not stand for the proposition that specific performance or withdrawal of a guilty plea are necessarily the only remedies available for the prosecution's violation of a plea agreement, even though those were the only two remedies expressly discussed in that case. *See*

---

[4]Admittedly, in *E.V.*, the court departed from these "typical" remedies by not granting *any* relief, because it was "'clear beyond doubt' that the government's breach did not impact Appellant's sentence." *E.V.*, 500 F.3d at 755 (quoting *Goings*, 200 F.3d at 544). Even so, *E.V.* suggests that "atypical" remedies may be available.

*Santobello*, 404 U.S. at 262-63.  In remanding the case to the state court to determine, in its discretion, which remedy was appropriate, the Supreme Court explained that its concern was to best serve "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty."  *Id.*  I believe that the "interests of justice" and "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty," therefore, should be the "touchstones" in determining the appropriate remedy for the prosecution's breach of a plea agreement.

I also believe that a wider range of remedies should be considered, in appropriate cases, because breach of a plea agreement is a due process violation that is sufficiently serious that "harmless-error analysis does not apply."  *Mosley*, 505 F.3d at 810; *see also id.* at 812 (*Santobello* holds that harmless-error analysis does not apply).  If the typical remedies provide no relief, then failing to award any other relief suggests, in effect, that there has been no harm from the breach to be remedied, and the absence of other relief denigrates the due process right that has been violated.  *Santobello*, 404 U.S. at 257 (allowing the government to breach a promise that induced a guilty plea violates due process); *Sanchez*, 508 F.3d at 460 ("Due process may be violated if there is a breach of a promise that induced a guilty plea."); *E.V.*, 500 F.3d at 751 (violation of a plea agreement violates due process).

### e.    *The appropriate remedy here*

Here, using what I find from *Santobello* to be the "touchstones" for determination of the appropriate relief for the prosecution's breach of a plea agreement, I cannot find that the "interests of justice" or "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty," *Santobello*, 404 U.S. at 262-63, will be served by according Dicus no relief on the ground that he has obtained

what he sought in the plea agreement's "no other enhancements" provision. It is true that Dicus obtained what he sought in the plea agreement—avoidance of a career offender enhancement pursuant to U.S.S.G. § 4B1.1 because of his 1992 OWI 3rd conviction—but because of an intervening change in the law wrought by *Begay*, ___ U.S. ___, 128 S. Ct. 1581. The situation might be different, if Dicus had already been sentenced, and the sentencing court had declined to impose the then-applicable career offender enhancement, based on Dicus's 1992 OWI 3rd, notwithstanding the prosecution's improper argument for such an enhancement in derogation of its promises in the plea agreement. *See E.V.*, 500 F.3d at 755 (no relief from the prosecution's violation of the plea agreement was appropriate, because the sentencing court had refused to impose the enhancement for which the prosecution had improperly argued, in derogation of its promises in a plea agreement). Here, however, I agree with Dicus that the prosecution should not "get the benefit" of *Begay* to save it from the consequences of its violation of the plea agreement, because granting no relief in these circumstances simply will not recognize the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty.

The situation also might be different, if the prosecution's violation of the plea agreement had been less egregious, but it *was* egregious, and thus, undermined the whole system of trust upon which plea negotiations must be based. Again, granting no relief in these circumstances will not recognize the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty, nor will it serve the interests of justice, which are best served by granting relief from egregious misconduct. Moreover, as I mentioned above, the United States Attorney's Office for the Northern District of Iowa is a "repeat offender," where just before the breach of the plea agreement occurred in this case, the Eighth Circuit Court of Appeals had held that, in another case before Chief Judge Reade, the United States Attorney's Office for the Northern District of Iowa had also breached a

plea agreement by seeking sentencing determinations contrary to stipulations in the plea agreement. *See Mosley*, 505 F.3d at 808-09 (handed down October 12, 2007, just over a month before the prosecution filed its sentencing memorandum in this case on November 21, 2007, in which the prosecution sought application of the career offender sentencing provision contrary to the stipulations in the plea agreement). Both the interests of justice and recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty require a response to the repeated misconduct of the United States Attorney's Office for the Northern District of Iowa.

Under the circumstances of this case, I believe that an appropriate remedy for the prosecution's misconduct—that is, a remedy that serves both the "interests of justice" and shows "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty," *Santobello*, 404 U.S. at 262-63—is to reduce Dicus's sentence to the low end of his advisory sentencing guidelines range. This is so, notwithstanding that, in the absence of such prosecutorial misconduct, I would very likely have sentenced Dicus at the top end of the range based on his repeated sales of marijuana to minors. I find that such a remedy is appropriate, because it is likely to have a deterrent effect on prosecutorial misconduct, to provide an incentive to defendants to raise misconduct claims, and to serve other salutary goals.[5]

_____

[5]I note Professor Starr's observation that "[s]entence reduction is an accepted remedy in a number of jurisdictions for a variety of kinds of violations of criminal defendants' rights," having been approved, for example, by "the European Court of Human Rights, some European domestic courts, several Canadian provincial supreme courts, and the Appeals Chamber of the International Criminal Tribunal for Rwanda," although it is "essentially unknown in U.S. courts." Starr, *Sentence Reduction*, at 1. I also note, however, that reference to foreign law has been a controversial issue of late. *See, e.g.,* David S. Law, *Globalization and the Future of Constitutional Rights*, 102

(continued...)

⁵(…continued)

Nw. U. L. Rᴇᴠ. 1277, 1279-80 (2008) (noting that there "has been a torrential outpouring of literature on the propriety of judicial citation to foreign law, prompted by the Supreme Court's use of foreign authority in a recent string of controversial cases," and citing numerous examples); Mark Tushnet, *When is Knowing Less Better Than Knowing More?: Unpacking the Controversy Over Supreme Court Reference to Non-U.S. Law*, 90 Minn. L. Rev. 1275, 1276 (2006) (noting this controversy). The fiery debate over the issue has engaged even United States Supreme Court Justices. *Compare* Confirmation Hearing on the Nomination of Samuel Alito to the United States Supreme Court, 2006 WL 53273 ("I don't think that we should look to foreign law to interpret our own Constitution. I agree with you that the laws of the United States consist of the Constitution and treaties and laws and, I would add, regulations that are promulgated in accordance with law. And I don't think that it's appropriate or useful to look to foreign law in interpreting the provisions of our Constitution. I think the framers would be stunned by the idea that the Bill of Rights is to be interpreted by taking a poll of the countries of the world."); Confirmation Hearing on the Nomination of John G. Roberts, Jr., to be Chief Justice of the United States Before the S. Comm. on the Judiciary, 109th Cong. 200, 200-01 (2005) (Statement of then Judge Roberts) ("In foreign law you can find anything you want. If you don't find it in the decisions of France or Italy, it's in the decisions of Somalia or Japan or Indonesia or wherever. As somebody said in another context, looking at foreign law for support is like looking out over a crowd and picking out your friends. You can find them, they're there. And that actually expands the discretion of the judge. It allows the judge to incorporate his or her own personal preferences, cloak them with the authority of precedent because they're finding precedent in foreign law, and use that to determine the meaning of the Constitution. I think that's a misuse of precedent, not a correct use of precedent."); *with Roper v. Simmons*, 543 U.S. 551, 578 (2005) (Kennedy, J., writing for the majority) ("The opinion of the world community, while not controlling our outcome, does provide respected and significant confirmation for our own conclusions."); Ruth Bader Ginsburg, *"A decent Respect to the Opinions of [Human]kind": The Value of a Comparative Perspective in Constitutional Adjudication*, Constitutional Court of South Africa (Feb. 7, 2006) (reprinted at http://supremecourtus.gov/publicinfo/speeches/sp_02-07b-06.html) ("Foreign opinions are not authoritative; they set no binding precedent for the U.S. judge. But they can add to the store of knowledge relevant to the solution of trying questions. Yes, we should approach foreign legal materials with sensitivity to our differences,

(continued…)

First, precisely because this remedy provides a tangible consequence for the prosecution's misconduct, which the usual remedies for breach of a plea agreement do not in this case, this remedy serves the interests of justice by reinforcing that there must be consequences for violation of a defendant's due process rights, and the remedy also relates directly to the prosecution's duties in relation to promises made in the negotiation of pleas of guilty, because it recognizes that the prosecution's breached promise was an inducement to the defendant's guilty plea. *Santobello*, 404 U.S. at 262-63 (identifying the interests that the proper remedy should serve). "Most scholars have assumed that prosecutors generally prefer higher sentences, and the existing empirical evidence supports that conclusion." Starr, *Sentence Reduction*, at 23 (citing Stephen F. Smith, *Proportionality and Federalization*, 91 VA. L. REV. 879, (2005) 879, 896, 928 (2005); Jeffrey Standen, *Plea Bargaining in the Shadow of the Guidelines*, 81 CAL. L. REV. 1471, 1480 (1993); and Albert Altschuler, *Prosecutor's Role in Plea Bargaining*, 36 U. CHI. L. REV. 50, 52 (1968)). Indeed, my own experience over fourteen years and the sentencing of over 2,600 defendants does nothing to suggest that the assumption that prosecutors in this District prefer higher sentences is wrong. Thus, a sentence reduction is likely to be an effective

---

[5](...continued)

deficiencies, and imperfect understanding, but imperfection, I believe, should not lead us to abandon the effort to learn what we can from the experience and good thinking foreign sources may convey."). I also note that, as a controversy rages in the United States concerning citation of foreign law, United States decisions have recently been cited less often by foreign courts. *See, e.g., United States Court Is Now Guiding Fewer Nations*, N.Y. TIMES (Sept. 17, 2008) (online edition at http://www.nytimes.com/2008/09/18/us/18legal.html?_r=2&hp&oref=slogin&oref=slogin). I add that I am not relying on foreign law sources suggesting reduction of a defendant's sentence as a sanction for prosecutorial misconduct to support this opinion.

deterrent to prosecutorial misconduct. There is also a symmetry to such a remedy, which grants a defendant a sentence reduction for the prosecution's post-plea misconduct, where the United States Sentencing Guidelines are replete with provisions that impose a sentence increase upon a defendant for his post-plea misconduct. Indeed, the United States Attorney's Office in this District frequently attempts to increase a defendant's sentence for alleged post-plea misconduct. In answer to the suggestion that such a sanction visits upon the client, the United States, the sins of the attorney, whereas the Sentencing Guidelines visit upon the client the consequences of his own misconduct, I would respond that I am sanctioning egregious conduct by an Assistant United States Attorney in his official capacity and, in that respect, I am sanctioning conduct that *is* conduct by the executive branch of the United States. No other sanction would be a deterrent to official misconduct, because a fine against the prosecutor personally would inflict a private sanction for official misconduct, and a fine against the United States would be no deterrent at all, no matter how large.

Second, such a remedy provides an important incentive to defendants to raise issues of prosecutorial misconduct. *Cf.* Starr, *Sentence Reduction*, at 2 & n.10 (citing commentators who have suggested that the appropriate remedy is a combination of sanctions, including sentence reductions, to deter misconduct and to give defendants an incentive to raise misconduct claims). This is so, because, just as a sentence reduction provides a tangible consequence for the prosecution's misconduct, it provides a tangible benefit to the wronged defendant. Such a remedy also serves the interests of justice by vindicating the defendant's due process rights in a way that relates directly to the prosecution's duties in relation to promises made in the negotiation of pleas of guilty, where such a remedy recognizes that the prosecution's breached promise was an inducement to the defendant's guilty plea. *Santobello*, 404 U.S. at 262-63 (identifying the

interests that the proper remedy should serve). Even in cases in which a defendant may have some incentive to assert prosecutorial misconduct, it is rare that the defendant's counsel does not have some disincentives for asserting such a claim arising from the possibility of friction in future relations with the prosecutor's office in question, which could result in a detriment to other clients. This case was unique in that Dicus's sentencing hearing was defense counsel's last appearance in a federal criminal case before retiring, after thirty-two years of very impressive service to the legal profession, so that defense counsel was in the unique and unusual position of having nothing to fear for future clients from arguing for some relief for Dicus from prosecutorial misconduct in his case. Thus, the availability of a remedy that is less disruptive than withdrawal of a guilty plea may help to overcome the disincentives that defense counsel may otherwise face to raising a claim of prosecutorial misconduct, at the same time that the availability of such a remedy may increase the incentives for defendants to raise such claims and may increase the incentives for courts to sanction such misconduct, for the reasons explained just below.

Third, such a remedy not only avoids the inadequacies of the typical remedies, it avoids a remedy that would appear to be "excessive" or a "windfall" to the defendant, such as dismissal of the indictment, thereby removing one explanation for the failure of courts to respond to prosecutorial misconduct. As Professor Starr has observed,

> Current remedies for prosecutorial misconduct are strikingly ineffective, largely because courts view them as too costly to grant. Scholars too often have been unrealistic about this remedial deterrence problem, proposing stronger remedies for misconduct when the more realistic solution might be nominally "weaker" ones. Adding sentence reduction to current all-or-nothing remedial schemes could help to deter and condemn prosecutorial misconduct, while avoiding the social costs of retrial and providing a fair measure of relief to defendants whose rights have been violated.

Starr, *Sentence Reduction* at 55. Thus, a sentence reduction may be more palatable for the court to impose than other, more typical remedies for prosecutorial misconduct. Moreover, in this case, a sentence reduction is more appropriate, in my view, than foisting withdrawal of his plea on Dicus, which he does not want and which could work to his detriment, or doing nothing, because specific performance is no longer an option. *Cf. Williams*, 510 F.3d at 427 (holding that the court should not impose a remedy against the non-breaching party's will, so that the defendant, who did not want to withdraw his guilty plea, should be resentenced pursuant to the terms of the breached plea agreement).

Finally, the interests of justice from a *public* perspective are also served by imposing a sentence reduction as a sanction for the prosecution's violation of a plea agreement, where, as here, notwithstanding the reduction for prosecutorial misconduct, the sentence imposed still falls within the advisory guidelines range and is, therefore, presumptively reasonable on appeal. *See Rita v. United States*, ___ U.S. ___, ___, 127 S. Ct. 2456, 2465 (2007); *Gall v. United States*, ___ U.S. ___, ___, 128 S. Ct. 586, 597 (2007); *United States v. Whiting*, 522 F.3d 845, 849 (8th Cir. 2008).[6] The interests of

---

[6]I take no position, in this case, on whether still more egregious or malicious prosecutorial misconduct, or circumstances in which the defendant's conduct did not otherwise justify sentencing him at the top of the advisory guidelines range, might justify reduction of a sentence below the low end of the advisory guidelines range as a sanction for serious prosecutorial misconduct. However, I do not mean to suggest that the low end of the advisory guidelines range is the lower limit for a sentence reduction as a sanction for serious prosecutorial misconduct. For example, even a high-end or mid-range guidelines sentence could be reduced below the low end for serious prosecutorial misconduct, so long as the ultimate sentence was sufficient, but not greater than necessary, to achieve all of the purposes of federal sentencing. Also, even in this case, had I not chosen the high end of the advisory guidelines range to start with, the rationale of this opinion would suggest that a sentence reduction for serious prosecutorial misconduct could

(continued…)

justice from both the defendant's and the public's perspective are also served, where, for the reasons explained below, the reduced sentence imposed as a sanction still serves the purposes of sentencing without regard to remedying prosecutorial misconduct.

Therefore, as a sanction for the prosecution's violation of the plea agreement in this case, I sentence Dicus to 70 months imprisonment, the low end of his advisory guidelines range.

## C. Reasonableness Of The Resulting Sentence

Because I have reduced Dicus's sentence as a sanction for prosecutorial misconduct, I must determine whether the resulting sentence in this case, as in any other case not involving such a sanction, still serves the purposes of sentencing, without regard to remedying prosecutorial misconduct. As explained above, there are no remaining objections to the calculation of Dicus's advisory guidelines range. Thus, the focus is the reasonableness of the sentence that I have ultimately imposed, after calculation of Dicus's advisory guidelines range.

### 1. The "reasonableness" analysis

As the Eighth Circuit Court of Appeals very recently reiterated,

> We review the sentence imposed for reasonableness, first "ensur[ing] that the district court committed no significant procedural error." *Gall v. United States,* --- U.S. ----, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007); *see also Whiting,* 522 F.3d at 849. If the district court's decision is "procedurally sound," we proceed to review the sentence for substantive reasonableness under an abuse of discretion standard. *Gall,* 128 S. Ct. at 597; *Whiting,* 522 F.3d at 849. We may apply

---

[6](...continued)
have resulted in a sentence below the bottom of the advisory guidelines range.

> a presumption of reasonableness to a sentence within the
> properly calculated guideline range but are not required to do
> so. *See Rita v. United States,* --- U.S. ----, 127 S. Ct. 2456,
> 2465, 168 L. Ed. 2d 203 (2007); *Gall,* 128 S. Ct. at 597;
> *Whiting,* 522 F.3d at 849. In imposing a sentence under 18
> U.S.C. § 3553(a), a sentencing court abuses its discretion if "it
> fails to consider a relevant factor that should have received
> significant weight, gives significant weight to an improper or
> irrelevant factor, or considers only the appropriate factors but
> commits a clear error of judgment in weighing those factors."
> *United States v. Watson,* 480 F.3d 1175, 1177 (8th Cir. 2007).

*United States v. Brown*, ___ F.3d ___, ___, 2008 WL 3891397, *6 (8th Cir. Aug. 25, 2008). As the Eighth Circuit Court of Appeals has also explained, "'Substantive sentencing acts include, most importantly, how a district court balances the § 3553(a) sentencing factors to derive its sentence.'" *United States v. Saddler*, ___ F.3d ___, ___, 2008 WL 3367579, *6 (8th Cir. Aug. 13, 2008) (quoting *United States v. Tabor*, 531 F.3d 688, 691 (8th Cir. 2008)).

### 2. *The balance of the § 3553(a) factors*

Section 3553(a) of Title 18 provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," giving consideration to various enumerated factors. 18 U.S.C. § 3553(a). After considering the balance of the pertinent § 3553(a) factors, *see Saddler*, ___ F.3d at ___, 2008 WL 3367579 at *6 (such balance is the most important substantive sentencing act), I find that a 70-month sentence is appropriate. In particular, such a sentence is appropriate in light of "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), including prior convictions, which fully justify a sentence within the advisory guidelines range; "the need for the sentence imposed," 18 U.S.C. § 3553(a)(2), which here arises in large part from

the extent and frequency of the defendant's illegal conduct; "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); "the kinds of sentence and the sentencing range established for" Dicus's offenses, 18 U.S.C. § 3553(a)(4)(A); pertinent policy statements, 18 U.S.C. § 3553(a)(5); and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," including in this case Dicus's wife, who received a 48-month sentence in this case, 18 U.S.C. § 3553(a)(6).

Indeed, albeit in the alternative, I believe that the prosecution's breach of a plea agreement may properly be considered *as a § 3553(a) factor* in determining the defendant's sentence. This is so, because § 3553(a)(1) requires the court to consider, *inter alia*, the defendant's "history." 18 U.S.C. § 3553(a)(1). The defendant's post-plea "history" presumably includes not only his own conduct, but the conduct of the prosecution toward him. In other words, wrongs done to the defendant post-plea seem to me to be just as relevant to determination of the defendant's sentence as any wrongs done by the defendant post-plea. For that reason, I believe that I could properly consider the prosecution's breach of the defendant's plea agreement as part of his "history" pursuant to § 3553(a)(1) in determining the appropriate sentence.

More specifically, as to the purposes set forth in subsection (2), I find that a sentence of 70 months is sufficient, but not greater than necessary, to reflect the seriousness of and to provide just punishment for Dicus's offenses of conspiracy to distribute and to possess with intent to distribute marijuana within 1,000 feet of a playground in violation of 21 U.S.C. §§ 841(a)(1), 846, and 860 in **Count 1**, and being an unlawful user of marijuana and a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2), in **Count 5**, and also sufficient to promote respect for the law, because the term of imprisonment is far from insignificant in

comparison to the crimes to which Dicus has pleaded guilty. *See* 18 U.S.C. § 3553(a)(2)(A). I also find that such a sentence will afford adequate deterrence to criminal conduct, again, because it is far from insignificant in comparison to the crimes to which Dicus has pleaded guilty. *See* 18 U.S.C. § 3553(a)(2)(B). Next, I find that such a sentence will protect the public from further crimes of the defendant, not only because of the length of his incarceration, but because of the opportunity that the term of imprisonment will provide for him to obtain drug treatment and to work toward rehabilitation. *See* 18 U.S.C. § 3553(a)(2)(C). Finally, I find such a sentence will provide Dicus with needed educational or vocational training, medical care, or other correctional treatment, including the 500-hour residential drug treatment program, in the most effective manner. *See* 18 U.S.C. § 3553(a)(2)(D).

Thus, I reiterate my conclusion that a sentence of 70 months imprisonment is reasonable in this case.

### III. CONCLUSION

In this case, I find that a reduction in the defendant's sentence, albeit one to the low end of his advisory guidelines range, when I would otherwise have sentenced him to the high end, is the appropriate remedy for the prosecution's serious violation of the defendant's plea agreement. Such a remedy provides both deterrence for the prosecution's misconduct and an incentive to defendants to raise such misconduct. Such a remedy also serves the "interests of justice" and shows "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty." *Santobello*, 404 U.S. at 262-63. Finally, the reduced sentence in this case still serves the purposes of sentencing, upon consideration of the pertinent § 3553(a) factors, in that it is sufficient, but no greater than necessary, to achieve all of the appropriate sentencing purposes.

THEREFORE, I reiterate my conclusion at the September 9, 2008, sentencing hearing that defendant David Dicus should be sentenced to 70 months imprisonment, the low end of his advisory guidelines sentencing range, as a sanction for the prosecution's serious and recidivist violation of the defendant's plea agreement.

**IT IS SO ORDERED.**

**DATED** this 24th day of September, 2008.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA